IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SPECIFIC GOOGLE SEARCH DATA | ) ) ) ) ) ) |

Case No. 1:25-mj- 3-01-AJ

**Filed Under Seal**

AFFIDAVIT IN SUPPORT OF
APPLICATIONS FOR SEARCH WARRANT

I, Timothy S. Hoover, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, being duly sworn, hereby depose and state under oath as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a warrant for information that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a networking company headquartered in Mountain View, California ("Google"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Attachment B.[1]

2.    The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further

_____

[1] The Government maintains that the information sought herein consists entirely of "record[s]" other than the "contents of communications," subject to an order under 18 U.S.C. § 2703(d), which requires the Government to show only that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. See 18 U.S.C. § 2703(d). Google has indicated in other matters that it believes a search warrant is required to obtain the location data sought herein. Although the Government disagrees with Google's position, because there is probable cause to believe that the information sought herein will contain evidence of the federal criminal offenses specified in this affidavit, the Government is seeking a search warrant in this instance in order to speed collection of the data due to its time sensitive nature.

described in Attachment A.  Upon receipt of the information described in Attachment A, government-authorized persons will review the information to locate items described in Attachment B.

3.      I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. §2510(7); that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in18 U.S.C. §2516.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.  I have been employed by ATF since 2001 as a Special Agent.  I have a completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia.  I have received specialized training in firearms identification and the investigation of firearms-related offenses.  I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts.  I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs.  As such, I have coordinated the controlled purchases of illegal firearms and narcotics utilizing confidential sources, cooperating witnesses and undercover law enforcement officers; written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and narcotics; conducted electronic and physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the

purchase and sale of firearms and illegal drugs; provided testimony, both in Grand Jury proceedings and District Court proceedings; and spoke with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal firearms and drugs. In addition, I have been involved in the investigation of street gangs, including gangs with a national presence as well as locally based gangs. I have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

4.      Throughout my career, I have used cellular records and information, including information from electronic service providers such as Google, to identify and locate subjects involved in criminal activity.

5.      I am familiar with the facts and circumstances of this investigation from my own personal observations, my training and experience, my own participation in the investigation as well as information obtained from other members of law enforcement. Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation. While this affidavit contains all the material information, I am aware of that is pertinent to the requested search warrants, it does not set forth all my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, I have probable cause to believe that violations of 18 U.S.C. §922(j), unlawful possession of a stolen firearm, 18 U.S.C. §922(u) theft from a Federal Firearms Licensee ("FFL"), and 18 U.S.C. § 371: conspiracy to commit the offenses of 18 U.S.C. §922(j) and 18 U.S.C. §922(u) (collectively, the "TARGET OFFENSES"), have been, are being, and will continue to be committed by three unidentified suspects (collectively, the

"SUSPECTS").  There is also probable cause to search the information described in Attachment A for evidence of these TARGET OFFENSES as further described in Attachment B.

## **PROBABLE CAUSE**

7.      On Wednesday, November 27, 2024, at approximately 10:25 p.m. Eastern Standard Time ("EST"), a burglary occurred at Northeast Munitions, an FFL located at 416 Daniel Webster Highway, Suite F, Merrimack, New Hampshire 03056.  Northeast Munitions is a located in a strip mall with a parking lot in front, located immediately off Daniel Webster Highway, a major highway that runs south from Manchester, through Merrimack, until joining Everett Turnpike just north of Nashua.  There are multiple other businesses also within the strip mall, including the DW Diner, which is adjacent to Northeast Munitions and faces the Daniel Webster Highway, and the Children's Den, which is a childcare center in the rear of the strip mall facing the Souhegan River.

8.      No alarms were triggered during the burglary.  The following morning, on Thursday, November 28, 2024, at approximately 9:40 a.m., a worker who was there to salt the parking lot noticed that the door to the business had been smashed and reported the break-in to Merrimack Police Department ("MPD").  MPD notified the ATF, and the ATF Manchester Field Office assisted in the investigation.

9.      Responding officers observed that entry had been made to the business by breaking the glass on the front door.  A glass display case inside the store containing firearms was also smashed.  A total of seven (7) pistols, one (1) shotgun and an undetermined number of ammunition boxes were stolen during the burglary.  ATF worked with the FFL to conduct an inventory of their firearms, and the following eight firearms were determined to be stolen during the break-in:

| MANUFACTURER | MODEL | CALIBER | TYPE | SERIAL NUMBER |
|---|---|---|---|---|
| Glock GMBH | 17GEN4 | 9mm | Pistol | BGMV904 |
| Glock GMBH | 17 | 9mm | Pistol | ADKF510 |
| Glock GMBH | 45 | 9mm | Pistol | BWDK860 |
| Sun City Machinery Co., LTD | Stevens 320 | 12 gauge | Shotgun | 240560H |
| Bul Transmark LTD | SAS II | 9mm | Pistol | BAU-F042 |
| Heckler and Koch | VP9 | 9mm | Pistol | 224-201587 |
| Springfield Armory | Prodigy | 9mm | Pistol | NMH31750 |
| Smith & Wesson | M&P 9 | 9mm | Pistol | DLK9864 |

10.    Due to the Thanksgiving holiday on Thursday, November 28, 2024, the surrounding businesses were closed, and there was no ability to begin requesting surveillance footage from those nearby businesses.  ATF resumed their investigation the following day, on Friday, November 29, 2024.  Along with the assistance of MPD detectives, investigators began canvassing the immediate area around Northeast Munitions to request video footage.  Investigators have obtained a number of surveillance footage from the evening around the time of the burglary on Wednesday, November 27, 2024, and reviewed that surveillance.  I have personally reviewed these videos, and I summarize my observations of what can be collectively observed on video surveillance as follows:

11.    It appears that SUSPECTS arrived in a black sedan, that has turn indicators on the sideview mirrors, thin, roughly rectangular rear brake lights, a third brake light that sits at the top of the rear window, and a rear license plate that sits low on the bumper, well below the rear taillights ("SUSPECT VEHICLE").

12.    A map of Northeast Munitions and the surrounding streets is included here for reference:



13.     On the evening of November 27, 2024, at approximately 10:05 p.m., the SUSPECT VEHICLE appears to pass by Northeast Munitions on Daniel Webster Highway travelling northbound before making a right-hand turn onto Railroad Avenue.  Video surveillance shows the SUSPECT VEHICLE sitting for approximately three minutes prior to departing south on Daniel Webster Highway.  At approximately 10:11 p.m., the SUSPECT VEHICLE is observed on video exiting Railroad Avenue with its four-way flashers engaged, before it ultimately parks on East Chamberlain Road, the next road south of the entrance to the plaza that Northeast Munitions and the DW Diner were located.   The SUSPECT VEHICLE then turns off all lights and sits on East Chamberlain Road for several minutes until another vehicle makes a right to travel up the road, at which time the SUSPECT VEHICLE once again engages its four-way flashers.

14.    After several minutes, the SUSPECT VEHICLE travels up East Chamberlain Road out of camera view of the DW Diner.  The SUSPECTS are observed on DW Diner video entering camera coverage from the direction that the SUSPECT VEHICLE was last observed, where investigators surmise that the vehicle may have been parked.  The SUSPECTS make their way around the back side of the plaza, passing surveillance cameras for The Children's Den, a daycare on the backside of the plaza.

15.    At 10:26 p.m., the SUSPECTS are then observed on Northeast Munitions surveillance breaking the bottom portion of the glass to the front door.  It takes the SUSPECTS approximately forty seconds to break the glass before entering.  The three SUSPECTS are individually described as follows:

      a.  The first suspect appeared to be thinly built and average height, wearing a mask, blue latex gloves, a hooded black sweatshirt with yellow writing on the chest, black sweatpants and white slide on sandals for footwear ("FIRST SUSPECT");

      b.  The second suspect appeared to be thinly built and average height, wearing a white mask, blue latex gloves, a gray hooded sweatshirt, gray sweatpants and black sneakers ("SECOND SUSPECT"); and

      c.  The third suspect appeared to be of heavier build and average height, wearing a mask, blue latex gloves, a black hooded sweatshirt, black sweatpants and white sneakers ("THIRD SUSPECT").

16.    Upon entering, the FIRST SUSPECT is heard on surveillance video yelling for the SECOND SUSPECT to give him the hammer.  The SECOND SUSPECT hands what appears to be a standard framing hammer with a light-colored wooden handle to the FIRST SUSPECT.  The FIRST SUSPECT then smashes a display case.  All three SUSPECTS are seen taking firearms

from the shattered case.  The SECOND SUSPECT steals a shotgun from a floor rack located in the center of the store, while the THIRD SUSPECT steals an undetermined amount of ammunition. The SUSPECTS then depart the store through the broken lower portion of the door from which they entered.  The SUSPECTS spend less than thirty seconds inside the store before exiting at approximately 10:27 p.m., according to Northeast Munitions surveillance footage.

17.    Surveillance footage from the DW Diner shows the FIRST SUSPECT sprinting along the side of the diner that runs parallel to Daniel Webster Highway, heading back in the direction of the general area that the SUBJECT VEHICLE was last observed on video surveillance. The FIRST SUSPECT is followed by the SECOND SUSPECT and the THIRD SUSPECT.  The SECOND SUSPECT appears to drop a white object.[2]  The THIRD SUSPECT appears to drop a dark colored object near the door of DW Diner.[3]

18.    The FIRST SUSPECT is observed on DW Diner video running towards the back of the building adjacent to East Chamberlain, but does not appear on the Children's Den video in the rear of the building, leading investigators to surmise that the FIRST SUSPECT went along the back of the diner before jumping up on a retaining wall to return to the vehicle believed to be parked in the area of East Chamberlain Road.  The SECOND SUSPECT and THIRD SUSPECT are observed on video taking a path of travel, similar to the path used to walk in before the burglary, that runs parallel to Daniel Webster Highway by the D.W. Diner video surveillance, towards the area where the SUSPECT VEHICLE had last been observed on video surveillance.  Just prior to reaching East Chamberlain Road, an SUV is observed traveling by the area of the SECOND SUSPECT and THIRD SUSPECT on Daniel Webster Highway, causing the SECOND SUSPECT

---

[2] Law enforcement subsequently recovered and collected a white vape box in the same general area in which the white object was dropped.

[3] Law enforcement subsequently recovered and collected a black grip backstrap for one of the stolen pistols in the area in which the dark colored object was dropped.

and THIRD SUSPECT to duck down in the scrub brush between the diner parking lot and East Chamberlain Road to avoid observation.

19.    Once the SUV passes by and heads up the hill on East Chamberlain, the beam of the headlights from the SUSPECT VEHICLE is visible, and the SECOND SUSPECT and THIRD SUSPECT can be observed exiting off the camera screen in the direction that the SUSPECT VEHICLE was last observed on video surveillance.  The SUSPECT VEHICLE then is observed on video traveling back up the hill on East Chamberlain Road, in the direction of Oak Street. Another map of the area is included below for reference:



20.    At approximately 10:30 p.m., surveillance video from New Hampshire Hydraulics on Columbia Circle show the suspect vehicle head down Columbia Circle at a high rate of speed before ultimately turning right on Daniel Webster Highway and heading south.

21.     Approximately 1.3 miles south of New Hampshire Hydraulics on Daniel Webster Highway is a Gulf gas station at the intersection of Greeley Street, Continental Boulevard and Camp Sargent Road.  At approximately 10:33 p.m., video from the Gulf gas station shows a vehicle that appears to be similar to the SUSPECT VEHICLE make a right-hand turn onto the onramp for the Everett Turnpike South.

22.     At the time the burglary occurred, Northeast Munitions was closed and no store employees or their smartphones were present.

## GOOGLE SERVICES

23.     A cellular telephone or mobile telephone is a handheld wireless device primarily used for voice, text, and data communications through radio signals.  Cellular telephones send signals through networks of transmitter/receivers, called "cells," that enable them to communicate with other cellular telephones or traditional "landline" telephones.  Those cells are often mounted on cellular towers.  Cellular telephones may also include global positioning system ("GPS") technology for determining the device's location, as well as cell site tower location data to show the general area in which a cellular phone is being utilized for voice, text, and data usage.

24.     Google is a company that, among other things, provides electronic communication services to subscribers, including email services.  Google allows subscribers to obtain email accounts at the domain name gmail.com and/or google.com.  Subscribers obtain an account by registering with Google.  A subscriber using Google's services can access his or her email account from any computer connected to the Internet.

25.     Google has developed an operating system for mobile devices, including cellular phones, known as "Android," which is a proprietary operating system.  Nearly every cellular phone using the Android operating system has an associated Google account, and Android phones prompt users to add a Google account when they first turn on a new Android device.

10

26.     Google collects and retains location data from Android-enabled mobile devices when a Google account user has enabled Google location services.  Google can also collect location data from a non-Android device, such as an iPhone, if the device is registered to a Google account and the device's user has location services enabled.  The company uses this information for location-based advertising and location-based search results.  This location information is derived from GPS data, cell-site/cell-tower information, and Wi-Fi access points.

27.     Location data can assist law enforcement investigators to identify the cellular telephones in the area of whatever offenses they are investigating, during whatever period is relevant.  This, in turn, will allow law enforcement to identify potential witnesses, as well as possibly inculpating or exculpating account owners.  Additionally, location information digitally integrated into image, video, or other computer files sent via email can further indicate the geographic location of the accounts user at a particular time (*e.g.,* digital cameras, including on cellular telephones, frequently store GPS coordinates indicating where photo was taken in the metadata or image file).

28.     Google offers a web mapping service called "Google Maps" that offers users real-time GPS navigation, traffic/transit information, satellite imagery, street maps, and route planning to and from locations by foot, bicycle, or car.  Users who search for a specific location in Google Maps may receive a map of the location and surrounding area, as well as travel routes to or from the location of the user, if location services are enabled, or any specific location specified by the user. Google Maps is accessible via the Google Maps app and the Google Maps web page.  This means that Google Maps are accessible not only on Android devices, but also other devices, such as iPhones.

29.     Google also developed and operates Google Search, a web search engine that is accessible via web browsers.  Google Search allows users to search for certain terms and receive information regarding the terms searched from publicly-available web servers on the World Wide Web.  Depending upon the web browser used, a Google Search for a specific address or entity may provide an overview of the searched address/entity, including the entity's address, hours of operation, reviews, phone number, an image of the location, a link to Google Maps, and any associated web pages for the address/entity.

30.     Web browsers collect User Agent Strings[4] (UAS) of all visitors to a web page in order to provide the visitor a version of the website that is properly formatted for their web browser. A UAS provides details about the hardware and software used to visit the webpage, such as the operating system, web browser version, and occasionally the hardware manufacturer of the device used to visit the web page.  These details can aid in identifying suspects who searched for location of the burglary, at Northeast Munitions.

**EVIDENCE RELEVANT TO THE TARGET OFFENSES**

31.     Based on my training and experience investigating FFL burglaries with multiple suspects, cell phones are often used to plan and coordinate the FFL burglary.

32.     I know through my training and experience that criminals will often reconnoiter their targets before committing a crime.  Some of this reconnaissance can occur over the internet through mediums like Google maps to determine the target location and its proximity to major roads, highways, police stations, etc. which could affect their planned criminal act.  This pre-planning may take place hours or days before the crime is committed.

---

[4] A User Agent String identifies a user's web browser and provides certain system details to the website that a user visits, which the website uses to provide the user content that is tailored to the user's specific computer environment.

33.     Furthermore, I know from my involvement in this investigation that Northeast Munitions is a small establishment and sits several stores interior from the front of a commercial business plaza on a busy highway.  It is not readily recognizable from the road, making it inconspicuous to the average passerby, therefore an individual driving to that address is more likely to utilize assisted navigation such as Google Maps.

34.     I also know that, in this case, Northeast Munitions was closed for the Thanksgiving holiday as of 6pm on the evening of Wednesday, November 26, 2024, and did not re-open until the morning of Friday, November 28, 2024.  I also know that the other businesses in the same building were closed during approximately that same timeframe, as those businesses were closed on Thursday November 27, 2024, when the burglary was ultimately reported and law enforcement first attempted to obtain video surveillance of the burglary.[5]  Given the facts of this case, where three suspects targeted Northeast Munitions at a time when Northeast Munitions and the other businesses in the area were closed, and that the suspects appeared to scout out the area for about 20 minutes before, it is likely that the SUSPECTS planned and coordinated the execution of this burglary, which included using the internet to research Northeast Munitions to either communicate with each other and/or research Northeast Munitions and its' firearms (including their assessed/appraised values) as well as researching nearby businesses, including opening and closing time(s).

---

[5] I spoke with an employee from Northeast Munitions on January 8, 2025, who confirmed that he closed the business at 6:00pm and left at 7:00pm.  This employee confirmed as well that all businesses in the plaza were closed the following day on November 27, 2024 for Thanksgiving.  According to the same employee, the following businesses are located in the same plaza:  Children's Den, D.W. Diner, Hearing Life of Merrimack, CPTE Physical Therapy, Modern Nails and Spa, Philip Taylor Salons, B Well Studios, and Bradford's Driving School.  I conducted an online search of these businesses' operating hours, and learned that all of these businesses are normally closed at or before 6:00pm on Wednesdays.  All of these businesses are the same businesses that were operating on/about November 26, 2024.

35.    Additionally, further planning by the SUSPECTS is demonstrated by the fact that the SUSPECTS all wore masks, that the FIRST SUSPECT gave orders to co-conspirators during commission of the crime, that the robbery occurred very quickly (under 30 seconds), and specific guns within the store were targeted for theft while others were left undisturbed, suggesting that the SUSPECTS researched the store's inventory prior to the burglary.  All of these facts lend to a level of planning which very likely involved the use of internet research and/or cellular devices.  In my training and experience, cell phones were likely used in this case to facilitate the internet research, planning, and communication regarding this particular coordinated FFL burglary, and it is likely that at least one of the three SUSPECTS carried and/or used their phone in the planning and/or commission of this offense, including possibly google searching the location of the crime and their operating hours.

36.    Based on my training and experience, I believe that attempting to identify any individual who conducted a Google search (Search bar or Google Maps application) of the business of Northeast Munitions and/or its' street address of 416 Daniel Webster Hwy, Merrimack, NH 03054 between November 26, 2024, at 06:00 p.m. EST through November 27, 2024, at 09:40 a.m. EST may help identify the individuals involved in planning the burglary.  The information requested will assist investigators in identifying the subjects who are responsible for the burglary.  Northeast Munitions is a business that closes at 6:00 p.m. EST and would not usually warrant an Internet search after business hours unless an individual had plans to travel there after business hours.

37.    Based on the foregoing, there is probable cause to believe that information stored on Google's servers associated with certain search terms and locations entered into Google Search

and/or Google Maps, as detailed in Attachment A, will contain evidence relevant to the aforementioned TARGET OFFENSES as indicated in Attachment B.

38.     As further described in Attachment A, the relevant locations and search terms to be searched are as follows:

**The Google Maps Place Hyperlink**:

https://www.google.com/maps/place/NORTHEAST+MUNITIONS/@42.8582998,71.49 41006,17z/data=!3m1!4b1!4m6!3m5!1s0x89e24f2436733e07:0xbb56026604482ba2!8m 2!3d42.8582959!4d71.4915257!16s%2Fg%2F11c610jg8n?entry=ttu&g_ep=EgoyMDI0 MTIwMi4wIKXMDSoASAFQAw%3D%3D, or however this location information is indexed by Google;

**For the Business**:  Northeast Munitions

**Located at the Physical Address**:  416 Daniel Webster Hwy Suite F, Merrimack, NH 03054

as well as the following all instances in which Google Search or Google Maps was used to obtain search results for, or direction to or from, any of the following identifiers, in whatever case they may appear (upper or lower case) and with whatever punctuation may appear (including or excluding commas, spaces or other punctuating marks) for the following additional search terms:

a.  "Northeast Munitions, 416 Daniel Webster Highway, Suite F, Merrimack, New Hampshire 03054"

b.  "Northeast Munitions, 416 Daniel Webster Highway, Merrimack, New Hampshire 03054"

c.  "Northeast Munitions, 416 Daniel Webster Highway, Suite F, Merrimack, New Hampshire"

d.  "Northeast Munitions, 416 Daniel Webster Highway, Merrimack, New Hampshire"

e.  "Northeast Munitions, 416 Daniel Webster Highway, Suite F, Merrimack"

f.  "Northeast Munitions, 416 Daniel Webster Highway, Merrimack"

g.  "Northeast Munitions, 416 Daniel Webster Highway Suite F"

h.  "Northeast Munitions, 416 Daniel Webster Highway"

i.  "Northeast Munitions, Merrimack, New Hampshire"

j.  "Northeast Munitions, Merrimack"

k.  "416 Daniel Webster Highway, Merrimack, New Hampshire"

l.  "416 Daniel Webster Highway, Merrimack"

39.    Based on my training and experience, I also know that individuals will sometimes use abbreviations or use common misspellings for certain terms.   As further described in Attachment A, and for the specific search terms identified above in (a)-(l), I would ask Google to include in their review of the search terms the following spellings and abbreviations of specific terms, in whatever case they may appear (upper or lower case) and with whatever punctuation may appear (including or excluding commas, spaces or other punctuating marks):

i.  "Northeast," spelled as "northeast"  "north east" "NE" and/or "N.E."

ii.  "Webster," spelled as "webster" and/or "websta"

iii.  "Highway," spelled as: "highway" "hwy" "hiway" "hi way" and/or "high way"

iv.  "Suite," spelled as "suite" "ste" "suit" "swet" and/or "sweet"

v.  "Merrimack," spelled as "merrimack" "merimack" "merrymack" "merymack" "merimac" "merrimac" "merrimak" "merimak" "merymak" "merrymak" "marrimack" "marimack" "marrymack" "marymack" "marimac" "marrimac" "marrimak" "marimak" "marymak" and/or "marrymak"

vi.    "New Hampshire," spelled as "new hampshire" "NH" and/or "N.H."

40.    As further described in Attachment A, the relevant time periods for the search is the search period occurring between November 26, 2024, at 06:00 p.m. EST through November 27, 2024, at 09:40 a.m. EST.

41.    As further described in Attachment B, the requested information would include the following:

    a.    IP addresses associated with each search term;

    b.    The date and time of the query;

    c.    The query;

    d.    The result;

    e.    The host;

    f.    The request;

    g.    The truncated Google Account and ID Administration ("GAIA") identification, including any subscriber information for the GAIA account, including but not limited to name, address, phone number, primary and secondary email address(es), any payment methods and the names associated with said payment methods;

    h.    All User Agent Strings associated each search instance; and

    i.    Correlations between and among the search instance, the IP address(es), the User Agent Strings, any known Google accounts, and any known devices, including those running the Android, iOS, or other operating systems.

42.    By identifying the users of the Google accounts by their GAIA identification or IP addresses of the subscribers provided in response to this request and cross-referencing this data with other investigatory steps, such as cellular telephone calling records, the SUSPECTS may be

identified.  Additionally, the UAS provides details about the hardware and software of the device used to visit the webpage, and these details can aid in identifying suspects who searched for location of the burglary, at Northeast Munitions.  The date, time, query, result, host and request is usually contained within the UAS and would provide specific information about what was searched for, when, and what results were populated in response to that request.

## LEGAL AUTHORITY

50.    The government may obtain both electronic communications and subscriber information by obtaining a search warrant. 18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

51.    Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the Internet company whose information will be searched. 18 U.S.C. § 2703(b)(1)(A).  Furthermore, unlike other search warrants, § 2703 warrants do not require an officer to be present for service or execution of the search warrant. 18 U.S.C. § 2703(g).

52.    If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber. 18 U.S.C. §§ 2703(b) (1) (A), 2703(c) (3).

## **CONCLUSION**

53.     Based on the foregoing, there is probable cause to believe that violations of 18 U.S.C. §922(j), unlawful possession of a stolen firearm, and 18 U.S.C. §922(u) theft from a Federal Firearms Licensee ("FFL"), and 18 U.S.C. § 371: conspiracy to commit the offenses of 18 U.S.C. §922(j) and 18 U.S.C. §922(u) (collectively, the "TARGET OFFENSES"), have been, are being, and will continue to be committed by three unidentified suspects, and that the information sought in Attachment A and to be searched in Attachment B constitute evidence on who may have committed these crimes.

Respectfully submitted,

/s/ Timothy S. Hoover
Timothy S. Hoover
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Subscribed and sworn to via telephone in accordance with Fed. R. Crim. P. 4.1 on January 8, 2025.

HON. ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant is directed to Google, Inc. ("Google") headquartered at 1600 Amphitheatre Parkway, Mountain View, California, and applies to all content and other information within Google's possession, custody, or control associated with the following Google Search and/or Google Maps data to search, identify and/or seek directions to the following specified search terms:

**The Google Maps Place Hyperlink**:

https://www.google.com/maps/place/NORTHEAST+MUNITIONS/@42.8582998,71.49 41006,17z/data=!3m1!4b1!4m6!3m5!1s0x89e24f2436733e07:0xbb56026604482ba2!8m 2!3d42.8582959!4d71.4915257!16s%2Fg%2F11c610jg8n?entry=ttu&g_ep=EgoyMDI0 MTIwMi4wIKXMDSoASAFQAw%3D%3D, or however this location information is indexed by Google;

**For the Business**:  Northeast Munitions

**Located at the Physical Address**:  416 Daniel Webster Hwy Suite F, Merrimack, NH 03054

as well as the following all instances in which Google Search or Google Maps was used to obtain search results for, or direction to or from, any of the following identifiers, in whatever case they may appear (upper or lower case) and with whatever punctuation may appear (including or excluding commas, spaces or other punctuating marks) for the following additional search terms:

a. "Northeast Munitions, 416 Daniel Webster Highway, Suite F, Merrimack, New Hampshire 03054"
b. "Northeast Munitions, 416 Daniel Webster Highway, Merrimack, New Hampshire 03054"
c. "Northeast Munitions, 416 Daniel Webster Highway, Suite F, Merrimack, New Hampshire"
d. "Northeast Munitions, 416 Daniel Webster Highway, Merrimack, New Hampshire"

  e. "Northeast Munitions, 416 Daniel Webster Highway, Suite F, Merrimack"
  f. "Northeast Munitions, 416 Daniel Webster Highway, Merrimack"
  g. "Northeast Munitions, 416 Daniel Webster Highway Suite F"
  h. "Northeast Munitions, 416 Daniel Webster Highway"
  i. "Northeast Munitions, Merrimack, New Hampshire"
  j. "Northeast Munitions, Merrimack"
  k. "416 Daniel Webster Highway, Merrimack, New Hampshire"
  l. "416 Daniel Webster Highway, Merrimack"

For the specific search terms identified above in (a)-(l), to include the following spellings and

abbreviations of specific terms, in whatever case they may appear (upper or lower case) and with

whatever punctuation may appear (including or excluding commas, spaces or other punctuating

marks):

  i. "Northeast," spelled as "northeast" "north east" "NE" and/or "N.E."
  ii. "Webster," spelled as "webster" and/or "websta"
  iii. "Highway," spelled as: "highway" "hwy" "hiway" "hi way" and/or "high way"
  iv. "Suite," spelled as "suite" "ste" "suit" "swet" and/or "sweet"
  v. "Merrimack," spelled as "merrimack" "merimack" "merrymack" "merymack" "merimac" "merrimac" "merrimak" "merimak" "merymak" "merrymak" "marrimack" "marimack" "marrymack" "marymack" "marimac" "marrimac" "marrimak" "marimak" "marymak" and/or "marrymak"
  vi. "New Hampshire," spelled as "new hampshire" "NH" and/or "N.H."

For the search period occurring between November 26, 2024, at 06:00 p.m. EST through

November 27, 2024, at 09:40 a.m. EST.

**ATTACHMENT B**

**Items to be Seized and Searched**

To the extent within the Google's possession, custody, or control, Google is directed to produce the following information associated with the searches articulated in Attachment A, which will be reviewed by law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control), who are authorized to review the records produced by Google in order to locate any evidence, fruits, and instrumentalities of 18 U.S.C. §922(j), unlawful possession of a stolen firearm, and 18 U.S.C. §922(u) theft from a Federal Firearms Licensee ("FFL"), and 18 U.S.C. § 371: conspiracy to commit the offenses of 18 U.S.C. §922(j) and 18 U.S.C. §922(u) (collectively, the "TARGET OFFENSES"):

For all instances in which Google Search or Maps was used to obtain search results for, or directions to or from, the address and entity identifiers specified in Attachment A, preferably in Excel format:

a. The IP addresses associated with each search term;
b. The date and time of the query;
c. The query;
d. The result;
e. The host;
f. The request;
g. The truncated Google Account and ID Administration ("GAIA") identification, including any subscriber information for the GAIA account, including but not limited to name, address, phone number, primary and secondary email address(es), any payment methods and the names associated with said payment methods;
h. All User Agent Strings associated each search instance; and
i. Correlations between and among the search instance, the IP address(es), the User Agent Strings, any known Google accounts, and any known devices, including those running the Android, iOS, or other operating systems.